Our third case for argument is Childers v. Crow. Good morning. Good morning, Your Honor. We are ready to hear from you, Mr. Pincus. Thank you. May it please the court. My name is Howard Pincus from the Federal Public Defender, and I represent John Childers. Mr. Childers was convicted of two violations of Oklahoma's Sex Offender Registration Act, where one statute did not apply to him at all, and where his registration period had ended, so he could not be guilty of any SORA offense. This means that Mr. Childers is both actually innocent of the offenses, excusing his failure to within a statute of limitations and any other procedural bar to relief, and that his convictions violate his federal due process right to be convicted only on proof of every element of each offense. Mr. Childers' innocence claim is based on an element of the offense or all elements of an offense not applied to him. Though claims of actual innocence typically involve new facts, this is also a claim of actual innocence. It's the same type of claim as in Bowsley v. United States, which involved the narrowing of an offense element, and which the Supreme Court recognized could support a claim of factual innocence, citing habeas cases like Schlupp v. Della. And this court in Prose v. Anderson also recognized that this is a type of factual and actual innocence claim. Oklahoma's law defines the reach of the state offenses. After Mr. Childers' convictions, the Oklahoma courts issued decisions involving whether provisions of SORA could be applied retroactively. In Starkey, the Oklahoma Supreme Court held the state's ex post facto clause prevented an extension of registration periods from being applied retroactively. It relied in significant part on the fact that this extended residency restrictions that it considered to be analogous to banishment. The Oklahoma Court of Civil Appeals later applied this to Section 590, of which Mr. Childers was convicted, involving residency restrictions, and held that under Starkey, it was clear that as a matter of Oklahoma ex post facto law, the residency restrictions could not be made more stringent after the offense of conviction in the underlying sex offense. At the time of Mr. Childers' 1999 SORA conviction for violating Section, not his SORA conviction, his underlying sex offense conviction, Section 590 did not even exist. It was not enacted until 2003. Under Starkey and Graham, it could not apply to Mr. Childers at all. And so you're saying actual innocence, that he is convicted of a crime that he could not be convicted of under ex post facto law, right? Correct, Your Honor. Is that the same argument that was raised before the district court? Well, in the district court, the argument was more about the sentencing components of it. It was still based on Starkey and that line of cases. It's not precisely the issue. This court in its COA interpreted the petition liberally to include a claim analogous to the one we're making. We're making one that's slightly different. We're training it on... Isn't that a problem? I mean, there's a big difference between challenging the appropriate sentence and challenging whether the conviction itself was valid. Well, there is, but actual innocence excuses habeas problems with going forward, like statute of limitations or procedural default, and things like procedural default are grounded in principles of comedy and federalism. Same thing with the statute of limitations, which also goes to the finality, the state's interest in finality. Those interests are markedly weaker in the issue of whether this court considers something not raised in the federal district court, it doesn't involve any principles of comedy or federalism, and the Supreme Court has recognized that. But doesn't it involve the baseline of what appellate courts do, and that is to review issues that are raised before the district court? It does. But if actual innocence should excuse or does excuse the failure to raise something in the state courts, when you're challenging a state conviction, it should also excuse the failure to raise the precise issue in the federal district court. Do you have any case that would help us resolve that point? Just general principles of habeas law, like Engels versus Isaac, which indicate that the interests in the state procedural context are much stronger than the ones in the, are much stronger. And here we're only dealing with respect to this court's relationship with the federal district court in terms of federal interests and not any independent state interests, and actual innocence should allow that to be overcome just as it allows more weighty state interests in the habeas context, which are protected by numerous things like all the judge made rules about procedural default and also statutory things like the statute of limitations in AEDPA. This court's general hesitancy to review things that were not presented in the other ways, and it's just a judge made rule. It's not anything that this court can't excuse based on a showing of actual innocence, which is what we have here. We have actual innocence based on a state statute that doesn't apply to Mr. Childers at all. He was proceeding pro se in the district court. He raised something analogous to this, and this court should excuse any defect. So you would have us rule that the district court erred in not opining correctly on an issue that was not raised. Well, the district court, remember, relied only on the failure to file within the statute of limitations. And we're not disputing that Mr. Childers did not file within the statute of limitations. Actual innocence is a way around that. And that's something that, as the state points out, is purely legal here. It's based on the ex post facto issue that was raised in the district court, although in a slightly different way, and we're raising on appeal. And if as a matter of Oklahoma ex post facto law, section 590 did not apply to Mr. Childers at all, he's clearly actually innocent of that offense. He can't be guilty of an offense that just had no application to him. What about your claim, Mr. Pincus, on the residency provision? You've added that claim in your brief too, and I'm not sure how you can argue that claim's not been forfeited because that's really, it's an ex post facto claim, but it's nothing at all like what arguably was raised in his habeas petition. Well, Mr. Childers in his habeas petition believed that section 590 applied to him and that it only had a one-year maximum sentence. In fact, it didn't apply to him at all. But where did he raise that argument? In fact, you seem to be conceding that he didn't raise it because he believed it applied to him. I don't see how you get there. Well, he was relying on the effect of Oklahoma ex post facto decisions as to a sentence that he thought applied. And this is about whether the crime applied at all. It's still based on Starkey and Siniglia and the same cases that he cited in the federal district court. It is a different argument. It's not the same. It's quite a different argument. It's quite a different argument. And again, this, you know, his actual innocence should excuse his pro se filing, not containing this precise argument in the federal district court. It's something this court certainly can do. This court has said that it can consider these arguments forfeited or waived, but it also has the discretion not to. An actual innocence is a reason for it not to. And the Graham case shows very clearly that under Oklahoma ex post facto law, applying a more rigorous residency restriction can't be done consistent with Oklahoma ex post facto law. So applying a resident residency restriction at all certainly can't be. And this just did not exist at the time of his original sex offender conviction. So he's not guilty of it. He's actually innocent and it's a federal due process violation for him to stand convicted of a crime where no elements of the offense can be shown because there was no offense that applies to him at all. He also, as to both offenses, the residency violation and the failure to update address is actually innocent and entitled to habeas relief for a second reason. His convictions on both charges require that he actually be subject to SORA. And under Starkey and basic principles of ex post facto law under Oklahoma law, he was not. At the time of his sex offender conduct back in 1992 and 93, SORA provided that a registration period was 10 years, but only two years upon completion of a DOC sex offender treatment program, which Mr. Starkey, which Mr. Childers did complete. So his counsel that was changed and that act was changed in 1997 and that provision excusing that two year, two years provision was omitted in 97. Your clients was convicted in 99. So. Well, that's correct. And the Oklahoma courts have said in cases like Starkey that the that is the law in effect at the time of conviction that matters for Oklahoma ex post facto purposes. But that's inconsistent with basic Oklahoma ex post facto law. And in fact, in neither Starkey nor any other Oklahoma cases, was it an issue of whether it should be at the time of of the conviction or at the time of the act? Basic Oklahoma ex post facto law, like basic federal ex post facto law, looks to whether there is an increase in punishment for an act or a fact that was already established. This his acts, his sex offense crimes were in 1992 and 1993. At that time, he could have been subject to only a two year SORA registration requirement. That was changed to his detriment in 1997. And the same rule under bedrock principles of Oklahoma ex post facto law. It's the increase from the time of his offense conduct that is what matters for ex post facto purposes. But maybe but maybe in this particular area of registration for sex offenders, there is some logic in tying those registration requirements to the date of conviction for the offense. You get what I'm saying? Otherwise, you're looking at it as a freestanding charge, which really would would only be a charge if it is, again, connected to a prior sex offense. Well, the the time the registration period always runs from some point after conviction, just like a penalty runs from conviction. It's his act, though, that subjects him to SORA. It's when he's convicted of the act that SORA actually comes into play. But it's his conduct in committing a sex offense that makes him a sex offender and that subjects him upon conviction to the Sex Offender Registration Act. Do we know when he had sex offender treatment? Well, he has alleged it in his petition that he had sex offender. They completed the sex offender treatment program in prison. But we don't know when, right? Well, we know it was sometime before 2005 when he was released. It obviously was sometime between when he was convicted in 1999 and when he was released in 2005. And the appellee. If it was after 1997, when that two year provision was admitted from the Oklahoma statute. It surely was. And that's why we're saying that it has to run from the time of his sex offender sex offense under basic principles of Oklahoma law. And we'd ask this court to conclude that Mr. Childress is actually innocent, excusing any procedural barriers, and then grant him habeas relief. Thank you. Thank you. Mr. Finale. Thank you, Your Honor. May it please the court. My name is Joshua Finale from the Oklahoma AG's office, appearing on behalf of respondent Scott Crow. Petitioner seeks to undermine two state court convictions based on purely legal challenges that are both untimely and unexhausted. This court should decline petitioner's invitation to explore the merits of his claims and should instead affirm the ruling of the Northern District of Oklahoma dismissing his habeas petition. No relief is warranted here for two key reasons. First and foremost, petitioner's claims are procedurally barred and he's not shown his actual innocence sufficient to overcome those bars. And second, alternatively, even if this court were inclined to find that petitioner has raised a showing of actual innocence, this court should still remand the matter to the district court for further development of the record in the first instance below. Now, with the court's permission, I'd like to begin my argument at least the first few minutes here. What purpose would a remand? I didn't get that out of your brief. What purpose would a remand serve? Your Honor, I think the purpose of a remand would be only if this court were to find that petitioner has raised a showing of actual innocence in as much as this court would need to find that his ex post facto challenges raise ones of factual innocence. And here petitioner's claims simply can't. So you're that's why you would remand because we're talking facts and not law. And we can't we can't here look at whether or not the law would apply to this individual. Your Honor, in this respect, if the court truly did find that petitioner has raised a showing of factual innocence, then I think the matter would need to be remanded below for consideration of the merits in the first instance, because as the discretion or excuse me, absent extraordinary circumstances, a federal appellate court should deal with a case, whether procedurally or substantively in the same fashion that was done so below. And so here, because the Northern District of Oklahoma time barred petitioner without considering the merits of his claims, if this court truly were inclined to find that he's raised a claim of actual innocence in as much as he'd have to show his factual innocence, then this court should remand the matter. But I don't think the court needs to even go that far because petitioner here today has not shown anything more than legal insufficiency. Now, we know McQuiggan v. Perkins, the U.S. Supreme Court, cautioned that tenable actual innocence gateway pleas are rare. Indeed, under the Schlupp framework, it's only in the extraordinary circumstance where a petitioner has shown his actual innocence as a gateway to otherwise procedurally barred claims. Why doesn't this fit the framework of Bowsley? Your Honor, two responses. I'm sorry. I think McQuiggan even cited Bowsley as an example of an actual innocence claim. And this seems to fit Bowsley's structure, at least. Your Honor, my response to to the Supreme Court's decision in Bowsley is at least twofold here. First, although the U.S. Supreme Court did mention Bowsley in in in its reasoning in McQuiggan, the Supreme Court has consistently reaffirmed following Bowsley in McQuiggan in 2013, as well as in House v. Bell, which was in 2006, that a petitioner does need to come forth with evidence of new reliable claims showing his his innocence. But even if this court were inclined to find that Bowsley in some way is applicable to the instant facts, Bowsley considered an intervening change of law. In that case, there was a there was an intervening decision that changed the use of a firearm test under federal law. And the Supreme Court remanded the matter to further develop the record on that issue. But petitioner here can't avail himself of the reasoning in Bowsley or Bowsley, I'm sorry, because we don't have an intervening change of law here. So even if Bowsley stood for the proposition that actual innocence can be based on an intervening change of law, we don't have that here. And in fact, isn't that the whole point, though, of counsel's argument that there is a change in law. And as a result, ex post facto applies and he is being held accountable on charges that do not apply to him. Well, Your Honor, with with respect to the petitioner's allegation of an intervening change of law, I think that this court's order granting COA even recognized and that's petitioner could have brought his claims long ago in the same sense that that the petitioner in Starkey brought his claims in the first instance. It's based on a matter of statutory interpretation. So to the extent that petitioner sees this as an intervening change of law, as a reason to excuse the procedural impediments, we simply don't have that here. Petitioner is raising the same claims that he could have raised at the time of his direct appeal in 2010. And so to that end, and this court has recognized that ex post facto challenges amount to ones of mere their questions of pure law, essentially. And this court recognized that in the unpublished decision of Martin versus Ray, which is the case I discuss in my brief. And there this court declined to allow a COA on ex post facto challenges when the petitioner there was procedurally barred. He was unexhausted in that instance. And the court there reasoned that the petitioner had not even been close to showing actual innocence because he had asserted merely legal challenges without without in any way undermining the factual circumstances at issue there. The same was said by the district court for the District of Colorado and versus Ramesh, which perhaps even more pointedly addressed in ex post facto challenge. And there the petitioner, the the crimes that he was convicted of had even the acts that were alleged to have occurred had even partially predated the statute he was convicted under. And that was a prototypical ex post facto challenge. And the district court below said that that did not amount to a showing of actual innocence under the Schlupp and McQuiggan framework. And therefore, he was not able to show actual innocence. The same you're relying here on untimeliness and unexhausted. Is that it? That's what you're relying on. That's correct, Your Honor. And doesn't actual innocence trump both of those? It would, Your Honor, if petitioner were able to come forth with a credible showing of actual innocence and not mere legal insufficiency here. And petitioner's challenges offering that sort of prototypical pure question of law are not sufficient to overcome the procedural impediments that are at play here in this case. And so because petitioner is not only untimely, as the district court found below, but petitioner's claims are also unexhausted as he's not first fairly presented them in state court, but would now be subject to an anticipatory bar if he returned. And I think this goes to Judge Briscoe's question to petitioner's argument in the first instance. This wasn't these sorts of challenges weren't raised below. And not only were they not raised in state court, they also weren't raised in the federal district court below. And so what do you say to counsel's argument that, well, surely if actual innocence can trump all of these concerns that we would have and issues of comedy, surely actual innocence could trump waiver? Well, Your Honor, my response to petitioner's argument in that respect is the case at bar today does not share the same concerns that the petitioners had in McQuiggan as well as in Bowsley, because there we either have new reliable evidence, as was in the instance of McQuiggan, House v. Bell or Schlupp v. Dello or in Bowsley, this intervening change of law, a subsequent amendment to the law. We don't have that here. Petitioner is just raising legal challenges that could have been brought a long time ago. And so why don't we have that? I mean, we have if if Mr. Pincus argument is correct, we have a petitioner who wasn't subject to SORA at the time of his convictions, and he what he didn't he didn't arguably didn't have to register at all. He wasn't registered at the time. So he's not subject to SORA, which is an element of a SORA offense. Why isn't this the same? So, Your Honor, my response to petitioner's claim there is he's looking at matters that are simply undeveloped by the record below. And so because once we get those developed, if we remand to the trial court, he did assert in his petition that he had completed the treatment that was asserted in connection with count one of his petition where he what he called count one where he discussed the ex post facto argument. So wouldn't it be easy enough to get this back down to the district court and find out if he completed that treatment? Wouldn't that be easy enough to do? Well, respectfully, no, Your Honor, and to that end, I think that even if this issue were remanded to the district court, I think these matters are so purely wrapped up in Oklahoma state law that upon a remand, I think the district court might have to provide or present like a certified question of law to the Oklahoma Court of Criminal Appeals. And I understand that petitioner's argument here today is based primarily on Starkey and Sir Niglia decisions from the Oklahoma Supreme Court, as well as Graham versus Carrington Place Properties Association, which is from the Court of Civil Appeals and Intermediary Appellate Court in Oklahoma. But petitioner so much as acknowledges in his supplemental opening brief that we don't have a clear answer from the Court of Criminal Appeals. And to that end, had petitioner raised these claims fairly in state court, we might have that answer here today. The court wouldn't be forced to guess at questions of state law that were undeveloped in the record below. And so in that, I did want to ask you, it seems to me you didn't really make any argument in your brief as to whether you could interpret Starkey and I'm sorry, the other case and Graham and the third case, Sir Niglia, you didn't make any argument about that. Have you waived that if we decide we can reach that? Well, I certainly would would hope that I haven't waived that argument, Your Honor. And I think that I think that the procedural grounds are strong in this case, and that's why I stood mostly on procedure in my brief. What if we disagree? Where do we go then? We don't really have any briefing from you on what is a fairly complex issue. I think, Your Honor, if you disagree with me on procedure and even if this court were inclined to find that he has made a showing of actual innocence, I still don't think the record as it stands now is adequately developed enough to even bear out petitioner's claims on the merits. And so to that end, and I think with respect to Starkey and Graham, admittedly, a case like Graham at first blush, it seems like it's on point in this circumstance. But the fact remains that it was issued by the Court of Civil Appeals and we don't have an answer from the Court of Criminal Appeals. And so I don't know why we need to remand for obtaining more facts. Don't don't we have the guidance of the timeline of when these acts occurred, when he was convicted, when the statutes were effective, when they were revised? We know all that. That's correct, Your Honor. And so so we do know the timeline in the record, but there there aren't necessarily documents in the record that substantiate petitioner's claims. And I think this is to judge similar. Like what? So, for example, any evidence in the record other than petitioner's own self-serving statement that he completed the program while in the custody of the Department of Corrections. Have you ever challenged that fact? Well, Your Honor, we haven't and we haven't challenged that fact in the sense that that claim was not raised in the proceedings below. This is a new claim here today. And so and in my brief before this court, I certainly mentioned the fact that petitioners, the only evidence that he had completed that program is his own statement in the record on appeal, which is in his post-conviction pleadings. That's the record of page nine. And so to that end, all we have in the existing appellate record is petitioner's own self-serving statement that he completed that program. And so in that sense, because this claim wasn't fairly presented below, it certainly wasn't presented in state court and it wasn't presented in the federal district court below. The record in this case is woefully underdeveloped. And so the petitioner is is seeking to rely on the gaps in the record here to sort of to invite this court to speculate and conjecture not only on matters of unsettled Oklahoma state law, as in the retroactivity of Oklahoma's SORA, but also as to the factual matters in the record regarding his alleged completion of the program, the DOC treatment program during his time incarcerated. Also, what's unclear in the record is what his dates of reincarceration were following his release from confinement. Petitioner admits in his supplemental opening brief that this could be a possible wrinkle. It's not just a possible wrinkle there by statute under Oklahoma law, the Sex Offender Registry Act does not apply to individuals while incarcerated. And so once again, the court is left to speculate as to what his dates of reincarceration were, even if he had completed that treatment program, as he alleges in his post-conviction pleadings below. Well, if if we were to conclude that he is legally, factually and all other ways, innocent, can we reach that issue or has it been waived? As I understand your question, Your Honor, you're asking if the court finds he is actually innocent, can we reach the question of his duty to register? That would be his second ground in his brief. Can we can we can we look at either conviction and look at whether or not the convictions were valid or must we impose waiver and if we have to impose waiver? Tell me why. Well, respectfully, Your Honor, I think even if this court were inclined to approach that issue, I think there are significant roadblocks to consideration of the actual substance of petitioner's claims. First, as to his Section 590 ground, living within 2000 feet of a school. As I said, it depends on unsettled matters under Oklahoma state law. And as to his second ground, the duty to register that goes to both convictions, I think that depends largely on facts that are completely. Just answer my question. Hypothetically. I would say he's actually innocent. Isn't that something that we can reach, even though he's not raised it before the federal district court? Your Honor, I see that I'm just about out of time. I had his answer. Yes. And so so if this court truly did find that petitioner has overcome the procedural impediments here today, I still don't think that petitioner's claims are cognizable here today. I think that he's waived them. He's forfeited them by not raising them below. And I don't think this court should even approach the substance of his claims in the first instance. And so for these reasons, we'd ask you affirm the district court. Do you have any case where you have an actually innocent defendant? That we where we cannot reach the issue because of waiver. Well, Your Honor, my understanding is typically in the actual innocence context, as I noted at the forefront of my argument, a petitioner has come forth with new reliable evidence and they've developed that in the record. And we don't have that here today because petitioner is raising merely legal and unpreserved claims that have never been heard before. And so in that sense, Your Honor, that that portion is unclear. Thank. Twenty three seconds, 23 seconds. I'll be brief, obviously. The fact that this could have been raised earlier in the Oklahoma courts, that's causing prejudice. That was Bowsley. Bowsley shows that this is actual innocence. The appellee talks about how there's not proof that he Mr. Childers completed the program they represent or the appellee is the director of the Department of Corrections, and they know that he completed this or they know whether he completed this. And lastly, we've explained in our briefs why any reincarceration doesn't toll or restart the clock. There's nothing in the statute that suggests it does. And it's an obvious thing that would have been addressed in the statute if that were the case. There are no facts here that need to be developed. We know that it's all a question of when he was released, when his offenses were committed or when he was charged, when the underlying conduct for which he was tried or charged with this or violations occurred. Thank you. Thank you. Thank you, counsel. Thank you for your arguments this morning. Case is submitted.